UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN ASSOCIATION OF NON-
PUBLIC SCHOOLS,

EVEREST COLLEGIATE HIGH SCHOOL
AND ACADEMY,

FATHER GABRIEL RICHARD HIGH
SCHOOL,

LANSING CATHOLIC HIGH SCHOOL, and

CHRISTOPHER ABOOD, DONALD ENGLE,
JENNIFER ENGLE, THERESA GRUBER,
JAMES NORMAN, DAWN NORMAN,
RICHARD POLJAN, WILLIAM ROSS,
DEBORAH ROSS, ROBERT SCHWARTZ,
and MICHELLE SCHWARTZ, on behalf of
themselves and their minor children,

     Plaintiffs,

v.

ROBERT GORDON, in his official capacity as
the Director of the Michigan Department of
Health and Human Services,

     Defendant.

_____/

This case arises out of the same transaction or occurrence and involves one or more of the same parties as *Michigan Restaurant & Lodging Association, et al v. Gordon*, Case No. 1:20-cv-1104.

## **VERIFIED COMPLAINT**

Plaintiffs Michigan Association of Non-Public Schools ("MANS"), Everest Collegiate High School and Academy ("Everest"), Lansing Catholic High School ("Lansing Catholic"), Father Gabriel Richard High School ("Gabriel Richard"), and Christopher Abood, Donald Engle, Jennifer Engle, Theresa Gruber, James Norman, Dawn Norman, Richard Poljan, William Ross,

Deborah Ross, Robert Schwartz, and Michelle Schwartz, on behalf of themselves and their minor children, bring this Verified Complaint against Robert Gordon, Director of the Michigan Department of Health and Human Services, in his official capacity and allege the following in support of their claims:

## **NATURE OF THE ACTION**

In-person schooling is vitally important to the development of children. For religious schools, in-person schooling has heightened importance because religious practices, education, and formation are woven into the school day from beginning to end.  During the earliest days of the COVID-19 pandemic, when little was known about the virus, in-person schooling was suspended.  In the ensuing months, much was learned.  In accord with CDC recommendations, the State of Michigan permitted in-person schooling to resume in the Fall, provided each school submitted and abided by comprehensive safety plans.

Plaintiffs and other schools did just that—and at great expense.  Their commitment to in-person religious education drove them to innovate and retool so they could reopen safely.  They have installed sanitizing stations, outdoor cafeteria tents, and thermal cameras to monitor hallways for anyone experiencing a fever. They have reorganized their schedules, trained their staff, and scrupulously cleaned their facilities.  Plaintiffs have diligently followed their safety protocols and cooperated with state and local health officials to prevent the spread of the virus through the schools.

Plaintiffs' efforts have proved successful, and overwhelmingly so.  Transmissions of COVID-19 related to Plaintiffs' schools is extremely limited.  Everest has had **zero** known transmissions.  Due to their efforts, Plaintiffs' schools are some of the safest places for their students to be.  This is especially true when one considers the mental health consequences for many students due to their prolonged isolation.

2

Plaintiffs fully understand and appreciate the challenges of limiting COVID's spread and of contributing to the common good.  They are convinced that continuing in-person religious education *contributes* to the well-being of Michiganders, rather than harming it.  That is why they have gone to such extraordinary lengths to ensure in-person schooling can be done safely for everyone.

Despite all this, Defendant has shuttered Plaintiffs' schools.  At the same time, Defendant allows other activities with demonstrably higher risks to continue.  These include professional and collegiate athletics, tattoo parlors and hair salons.  Defendant's prior three-week "pause" order has now been extended and Plaintiffs face the prospect of indefinite future extensions. This extension must not be permitted.

Defendant's closure of high schools does not advance the common good, does not advance public health, harms Michigan's high school students, and prevents Plaintiffs from safely providing a religious education in accord with the United States Constitution and the Michigan Constitution. Defendant's actions are causing irreparable harm and he must be enjoined from enforcing the Order to preserve Plaintiffs' Constitutional rights.

## JURISDICTION AND VENUE

1.  The Court has original jurisdiction over this civil rights case under 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

2.  The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

3.  The Court has authority to issue a declaratory judgment under 28 U.S.C. § 2201.

4.  Venue is proper under 28 U.S.C. § 1391(b) because Defendant Robert Gordon performs his official duties in this judicial district, Plaintiffs MANS and Lansing Catholic are located in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred or will occur in this district.

## PARTIES

5. Plaintiff Christopher Abood is the parent of a child who is a student at Lansing Catholic.

6. Plaintiffs Donald and Jennifer Engle are parents to two children who are students at Everest.

7. Plaintiff Theresa Gruber is the parent to two children who are students at Lansing Catholic.

8. Plaintiffs James and Dawn Norman are parents to a child who is a student at Gabriel Richard.

9. Plaintiff Richard Poljan is the parent to a child who is a student at Lansing Catholic.

10. Plaintiffs William and Deborah Ross are parents to a child who is a student at Everest.

11. Plaintiffs Robert and Michelle Schwartz are parents to a child who is a student at Gabriel Richard.

12. Everest is a Catholic school in Clarkston, Michigan for preschool through 12th grade. Its principal place of business is 5935 Clarkston Rd., Clarkston, Michigan 48348.

13. Lansing Catholic is a Catholic school in Lansing, Michigan for grades 9-12. Its principal place of business is 501 Marshall St., Lansing, Michigan 48912.

14. Gabriel Richard is a Catholic high school in Ann Arbor, Michigan for grades 9-12. Its principal place of business is 4333 Whitehall Dr., Ann Arbor, Michigan 48105.

15. Everest, Lansing Catholic, and Gabriel Richard are members of the Michigan Association of Non-Public Schools ("MANS"), a nonprofit, interdenominational coalition that provides a voice for faith-based schools in Michigan. Its principal place of business is 510 South Capitol Avenue, Lansing, Michigan 48933.

16. MANS membership includes over 400 Michigan schools, including 60 high schools.

17. Everest, Lansing Catholic, and Gabriel Richard are typical of, and comparable to, other MANS-member schools.

4

18. Families are typical of, and comparable to, other families at MANS-member schools.

19. Defendant Robert Gordon is the Director of the Michigan Department of Health and Human Services (MDHHS). He issued the Order in purported exercise of his powers under Mich. Comp. Laws § 333.2253 and is being sued in his official capacity.

## FACTUAL ALLEGATIONS

### *Plaintiffs' Commitment to Religious Education*

20. Each of the named, individual plaintiffs ("the Parents") are practicing Catholics. They are raising their children, ("the Students," and together with the Parents, "the Families"), in the faith as well.  (Exhibit A, Parent Affidavits.)

21. The Students currently attend Everest, Lansing Catholic, and Gabriel Richard, where their faith has been nurtured and proliferated with the religious curriculum.

22. The Students receive the Eucharist during school masses and participate in the liturgy.  (*Id.* at ¶ 10.)

23. The Students receive the Sacrament of Reconciliation at school.  (*Id.*)

24. The Students participate in Eucharistic adoration at school.  (*Id.*)

25. The Families sincerely believe that the human person is both soul and body and that the practice of their faith demands certain physical elements that cannot be accomplished through video chats and other technological means.  (*Id.* at ¶ 9.)

26. Certain religious practices must be performed in person and cannot be accomplished by the Families on their own. For example, the reception of the Holy Eucharist, the Sacrament of Reconciliation, and Eucharistic processions and adoration.  (*Id.* at ¶¶ 9–12.)

27. The Families sincerely believe that the practice of their faith requires daily attentiveness to pious acts and deeds.  (*Id.* at ¶ 11.)

28. The Families chose Everest, Lansing Catholic, and Gabriel Richard for their children, and

pay tuition for their attendance, largely because of their commitment to the in-person religious experience and formation the School provides.  (*Id.* at ¶ 6.)

29.   Everest is a preschool-12th grade Catholic school in Clarkston, Michigan.  Its current student enrollment is 357 students.  Class sizes range from 11 to 24 students.  The average class size is 16 students.  (Exhibit B, Everest Affidavits, ¶ 3–4.)

30.   Everest's mission is "teach students to be Catholic Christian leaders who are capable of utilizing their strengths, so they can fulfill the unique plan that God has for each of them."  (*Id.* at ¶ 6.)

31.   Everest utilizes the Regnum Christi model of Integral Formation, which focuses on the complete formation of the whole person, body and soul.  (*Id.* at ¶ 9–10.)

32.   Lansing Catholic is a private Catholic school for grades 9–12 located in Lansing, Michigan.  Its current student enrollment is 437 students.  For the majority of classes, the maximum class size is 24 students.  The average class size is 18 students.  (Exhibit C, Lansing Catholic Affidavit, ¶¶ 3–4.)

33.   Lansing Catholic's mission is to "form the whole person spiritually, intellectually, and socially into faithful disciples of Jesus Christ."  (*Id.*, ¶ 8.)

34.   Gabriel Richard is a private Catholic school for grades 9–12 located in Ann Arbor, Michigan.  Its current student enrollment is 468 students.  Class sizes range from 3 students to 30 students at the most.  (Exhibit D, Gabriel Richard Affidavit, ¶ 3–4.)

35.   Gabriel Richard's mission statement states that it "exists to build up the Body of Christ through the intellectual and spiritual formation of its students. Rooted in the Catholic Intellectual Tradition, Gabriel Richard cultivates in each student a sense of awe in response to the beauty of truth. Strengthened by the Sacraments, students are equipped to live at the service of others through academic excellence, intentional discipleship,

creativity and sportsmanship."  (*Id.* at ¶ 8.)

36. Spiritual formation under the approaches of Everest, Lansing Catholic, and Gabriel
    Richard includes ensuring that the Catholic identity is prominent in the physical
    environment and safeguarding a physical and dignified space where the sacramental
    presence of Christ is accessible to students.  This cannot be meaningfully accomplished
    without the students' physical presence.  (Exhibits B, C, D.)

37. For centuries, families have concluded that their faith is best practiced by schooling their
    children in a way that weaves the faith into everyday acts and academic subjects.

38. In-person religious formation at schools like Everest, Lansing Catholic, and Gabriel
    Richard is irreplaceable. By attending in person, students learn the faith by examples set
    by fellow students and the religious leaders who teach them each day.  (*Id.*)

39. Many MANS-member schools, including Everest, Lansing Catholic, and Gabriel
    Richard, are staffed and operated by religious orders or other persons who have made
    lifelong vows to the practice of their faiths. Students who attend these schools have daily
    interactions with these role models and teachers.  Students' spiritual formation is
    achieved, in part, through the physical presence of these persons, whose visible presence
    in and of itself bears witness to the faith.  (*Id.*)

40. Many MANS-member schools, including Everest, Lansing Catholic, and Gabriel Richard,
    are staffed and operated by persons who are highly educated in the faith tradition espoused
    by the school. In-person attendance allows for students to engage in spontaneous and
    honest discussions of faith with these invaluable resources.  (*Id.*)

41. In-person religious formation instills through practice a basic tenet of the faiths practiced
    by all MANS-member schools: community is essential and gathering together in the
    practice of the faith is itself a holy act.  (*Id.*)

42.  The Families sincerely believe that the Students are best formed in their faith by the weaving of religious rites and habits into their regular school day.  (Exhibit A.)

43.  The Families sincerely believe that the Students' formation in the faith has suffered and will continue to suffer by separation from their religious school family.  (*Id.* at ¶ 18.)

44.  In-person religious formation is critical to the missions of MANS-member schools such as Everest, Lansing Catholic, and Gabriel Richard, and to the families whose children attend those schools. This includes, among other things:

   a.  modeling of behaviors, particularly toward and with others,

   b.  physical participation in religious rites, and

   c.  school days punctuated by prayer at specific times and occasions.

   (Exhibits A–D.)

45.  Everest, Lansing Catholic, and Gabriel Richard facilitate the regular celebration of various religious rituals, including:

   a.  Daily Mass,

   b.  Regular Eucharistic adoration,

   c.  Regular provision of the Sacrament of Reconciliation (confession),

   d.  Daily prayers throughout the day.

   (*Id.*)

***The Governor's Executive Orders***

46.  On March 10, 2020, Governor Whitmer issued Executive Order 2020-04, in which she declared a state of emergency in Michigan in response to the outbreak of COVID-19 and invoked the special powers available to a governor pursuant to the Emergency Powers of the Governor Act of 1945 and the Emergency Management Act, MCL §§ 30.403, 10.31. (Exhibit E.)

47. On March 13, 2020, Governor Whitmer issued Executive Order 2020-05, which prohibited all public and non-public schools from instructing students in person for three weeks. (Exhibit F.)

48. On April 2, 2020, Governor Whitmer issued Executive Order 2020-35, which suspended in-person instruction in public and non-public schools for the remainder of the school year. (Exhibit G.)

49. On June 30, 2020, Governor Whitmer issued Executive Order 2020-142 (EO-142), which had the stated purpose of "provid[ing] a structure to support all schools in Michigan as they plan for a return of preK-12 education in the fall."  (Exhibit H.)

50. EO-142 required every public and nonpublic school in the State of Michigan to "develop and adopt a COVID-19 Preparedness and Response Plan" that had to comply with certain minimum requirements.  (*Id.*)

51. EO-142 confirmed that "[t]here's no one-size-fits-all solution: what works in Lansing may not work in Sault Sainte Marie. Districts will retain flexibility to tailor their instruction to their particular needs and to the disease conditions present in their regions."  (*Id.*)

***MANS-member Schools Implement Comprehensive Safety Protocols***

52. Everest, Lansing Catholic, and Gabriel Richard prepared plans in anticipation of resuming in-person education in August 2020.  The schools' plans included specific measures to allow for in-person religious formation while still fully complying with CDC-recommended safety precautions.

53. Everest has implemented the following protocols:

    a. All staff and students wear facial coverings at all times except during meals or when alone in their classrooms or offices, unless a mask waiver is signed by a medical physician.

    b. Students are kept away from students in other classes as allowed by schedule.

    c. Students eat lunch in the lunchroom with appropriate distancing or in their classrooms as necessary.

    d. Students and teachers are provided regular opportunities for handwashing with soap and water by students and teachers.

    e. Students may not share personal items or supplies such as writing utensils.

    f. Student desks are wiped down with either an EPA-approved disinfectant or diluted bleach solution after every class period, or when students change classrooms.

    g. Frequently touched surfaces including light switches, doors, benches, and bathrooms undergo cleaning at least every four hours with either an EPA-approved disinfectant or diluted bleach solution.

(Exhibit B, ¶ 23.)

54. Everest has incurred more than $15,000 in expenses to implement safety precautions. (*Id.*, ¶ 24.)

55. Lansing Catholic has implemented the following protocols:

    a. All faculty, staff, and students conduct daily self-screenings and stay home if they are exhibiting any COVID-related symptoms.

    b. Students use separate entrances based upon grade. Upon arrival, each student must use the hand-sanitizing stations placed at the entrance.

    c. Each student was issued two cloth masks at the beginning of the school year. Students are also permitted to use disposable masks. Disposable masks are available at entrances in case students forget their masks.

    d. All staff and students wear facial coverings while indoors, except during meals. If staff or students are unmasked while outside, they must remain six feet from others.

    e. Students eat lunch six feet from one another, which is achieved through the use of an outdoor tent cafeteria and the school gymnasium.

    f. Students are kept away from students in other classes to the extent possible.

    g. All seating is assigned so as to facilitate contact tracing if necessary.

    h. Signage is used throughout the building to regulate the flow of traffic and minimize close contact.

    i. Two thermal cameras have been installed to monitor all hall traffic throughout the day for anyone who might be experiencing a fever. Alerts are sent to staff in order to verify whether someone is symptomatic.

j.   There is a designated isolation area for anyone exhibiting symptoms, with staff supervision.

k.   Students and teachers are provided regular opportunities for handwashing with soap and water by students and teachers.

l.   Students are required to bring a small, portable bottle of hand sanitizer to school each day.  Refill stations are in each classroom.

m.   Students may not share personal items or supplies such as writing utensils.

n.   All desks are sanitized when students change classes.

o.   The entire building is sanitized throughout the week.

(Exhibit C, ¶ 14.)

56.   Lansing Catholic has incurred more than $102,000 in expenses to implement safety precautions.  (*Id.* at ¶ 15.)

57.   Gabriel Richard has implemented the following protocols:

a.   All faculty and staff conduct daily self-screenings and stay home if they are exhibiting any COVID-related symptoms.

b.   Students use separate entrances based upon grade. Hand-sanitizing stations are placed and available at each of these entrances.

c.   All staff and students wear facial coverings while indoors, except during meals.  If a student does not have a mask, one is made available.  If staff or students are unmasked while outside, they must remain six feet from others.

d.   Students eat lunch six feet from one another, which is achieved through the use of classrooms, the gymnasium, and the outdoors.

e.   Students are kept away from students in other classes to the extent possible.

f.   All seating is assigned so as to facilitate contact tracing if necessary.

g.   Signage is used throughout the building to regulate the flow of traffic and minimize close contact.

h.   Block scheduling is employed to minimize student passing time and mitigate congestion in hallways multiple times a day.

i.   Temperature-scanning kiosks are installed at entrances.

j.   There is a designated isolation area for anyone exhibiting symptoms, with staff supervision.

    k.  Students and teachers are provided regular opportunities for handwashing with soap and water by students and teachers.

    l.  Students are encouraged to bring a small, portable bottle of hand sanitizer to school each day.  Hand sanitizing stations are situated in each classroom.

    m.  Students may not share personal items or supplies such as writing utensils.

    n.  All desks are sanitized when students change classes.

    o.  The entire building is sanitized throughout the week.

(Exhibit D, Gabriel Richard Affidavit, ¶ 15.)

58.    Gabriel Richard has incurred more than $59,000 in expenses to implement safety precautions.  (*Id.* at ¶ 16.)

59.    The preventative measures already in effect at Lansing Catholic, Gabriel Richard, and other MANS-member schools fully comply with and in many cases exceed the recommendations of the Centers for Disease Control and other respected entities.

60.    Safety measures at MANS-member schools such as Everest, Lansing Catholic, and Gabriel Richard have proven effective.  To date, there have been zero known cases of COVID-19 traced to Everest.  (Exhibit B, ¶ 25.)

61.    On information and belief, the safety protocols adopted by MANS-member schools were as successful or more successful in preventing the indoor transmission of COVID-19 as other, permitted activities.

### *Defendant Issues the Order*

62.    On November 15, 2020, Director Gordon issued an order titled "Gatherings and Face Mask Order" ("the November Order"), pursuant to Mich. Comp Laws § 333.2253.  (Exhibit D, Gatherings and Face Mask Order.)  The November Order categorically forbid high schools in Michigan, including MANS member schools like Everest, Lansing Catholic, and Gabriel Richard, from providing in-person religious formation to students for three weeks.  (Exhibit

I.)

63.  On December 7, 2020, Director Gordon issued a similar order ("the Order"), pursuant to the same authority.  (Exhibit J.)

64.  The Order is a one-size-must-fit-all directive that does not allow flexibility or tailoring by schools to allow in-person religious formation.

65.  Under Michigan law, anyone who fails to obey the Order is guilty of a misdemeanor and may be imprisoned for up to six months. Mich. Comp. Laws § 333.2261.

66.  Under the Order, and pursuant to Michigan law, local health departments and law enforcement officers are authorized to enforce the Order against those who do not comply with it.  *See* Mich. Comp. Laws §§ 333.2235(1), 28.602(f).

67.  Although all high schools must shut down, the Order expressly allows many other locations and entities to continue in-person activities.

68.  Professional and college athletes may continue to compete in close-contact games such as football, along with other ancillary activities such as practices, weight training, team rooms, film sessions, team meals, and other team meetings etc.  (Exhibit J, ¶ 6.)

69.  Retail stores, libraries, and museums may remain open at 35% capacity.  (*Id.*, ¶ 4(a).)

70.  Exercise facilities and indoor pools may remain open at 25% capacity.  (*Id.*, ¶ 4(b), (d).)

71.  Numerous "non-essential personal care services" may continue, so long as patrons wear masks, make an appointment, and avoid gathering in waiting rooms.  These include hair salons, nail salons, tanning salons, massage parlors, traditional spas, and establishments offering tattoos, body art, and piercing services.  (*Id.*, ¶ 4(f).)

72.  Boarding schools are permitted to conduct in-person instruction.  (*Id.*, ¶ 5(e).)

73.  Gatherings may occur at "trade schools and career schools "for the purpose of providing technical education services, including manufacturing, industrial technology, trades, and

cosmetology."  (*Id.*, ¶ 5(g).)

74.   In-person instruction is permitted for high school students if they are "necessary to complete requirements for a recognized postsecondary credential" and "cannot be completed remotely."  (*Id.*, ¶ 5(h).)

75.   In contrast, MANS-member high schools may not provide religious formation in person, no matter how few their students, nor how spacious their rooms, nor the precautions they take.

***Harm to Plaintiffs***

76.   Everest, Lansing Catholic and Gabriel Richard ceased in-person instruction as of November 18, 2020, out of fear that families or faculty or staff members would be prosecuted for misdemeanors, fined, and jailed.

77.   If Plaintiffs fail to comply with the Order, it is reasonably likely that Defendants or those under their authority will use the aforementioned enforcement mechanisms.

78.   The closure of MANS-member schools such as Everest, Lansing Catholic, and Gabriel Richard, or limitation in their operations, will result in irreparable harm to both the School and Plaintiffs.

79.   The students at MANS-member schools who are impacted the most by forcing remote learning are those most disadvantaged and at risk.  Students at these schools are at risk of failing because they have not been able to adapt well to online learning.  These setbacks affect the students' ability to thrive socially, academically, and spiritually.  (Exhibit B, ¶ 30–31; Exhibit C, ¶ 25–26; Exhibit D, ¶ 26–27.)

80.   The Centers for Disease Control ("CDC") have explained that in determining whether to conduct in-person instruction, schools should "consider other aspects of students' risk and wellbeing that arise when schools do not reopen for in-person classes."  (Exhibit K.)  "This

includes the potential adverse impacts on students' social-emotional, behavioral, and mental health, as well as the critical services provided to students to help mitigate health disparities and serve children in need, such as school lunch programs, special education services, after-school programs and mental health services."  (*Id.*)

81.   After the issuance of the November Order, but prior to the issuance of the Order on December 7, the CDC's Director stated that "for kids K–12, one of the safest places they can be, from our perspective, is to remain at school." C-SPAN, *CDC Director Redfield Says Data Supports Face-to-Face Learning in Schools*, video at 02:12–02:23 (Nov. 19, 2020), https://bit.ly/37Ae3F9 (viewed Dec. 7, 2020). The CDC Director confirmed that "K–12 schools can operate with face-to-face learning, and they can do it safely and they can do it responsibly." *Id.* at 01:21–01:41.

82.   The American Association of Pediatrics "strongly advocates that all policy considerations for the coming school year should start with a goal of having students physically present in school."  (Exhibit L.)  It has further stated, "The importance of in-person learning is well-documented, and there is already evidence of the negative impacts on children because of school closures in the spring of 2020. Lengthy time away from school and associated interruption of supportive services often results in social isolation, making it difficult for schools to identify and address important learning deficits as well as child and adolescent physical or sexual abuse, substance use, depression, and suicidal ideation. This, in turn, places children and adolescents at considerable risk of morbidity and, in some cases, mortality."  (*Id.*)

83.   Every day that students at MANS-member schools cannot gather together, the students and families are deprived of the religious formation and community that is at the core of their faith and the very reason for their enrollment.

84.  As of the date of this filing, Everest, Lansing Catholic, and Gabriel Richard, and other MANS-member schools may not deliver in-person religious formation, regardless of the precautions they take.

85.  As of the date of this filing, a college freshman may play full-contact football, but a high school senior of the exact same age may not join any number of his classmates to learn and pray, regardless of the precautions taken.

86.  Forbidding students from attending religious schools that have protective measures in place, and while permitting countless other gatherings that pose equal or higher risks, is irrational and arbitrary.

87.  Everest, Lansing Catholic, and Gabriel Richard, and other MANS-member schools have put in place strong, effective, and proven preventative measures against the transmission of COVID-19, while still allowing in-person instruction and formation.

88.  But for the MDHHS's Emergency Order, Everest, Lansing Catholic, and Gabriel Richard would offer in-person instruction and formation.  In-person schooling would resume immediately if permitted.

## COUNT I — VIOLATION OF THE FIRST AMENDMENT'S FREE EXERCISE CLAUSE (U.S. CONSTITUTION, AMENDMENT I; 42 U.S.C. § 1983)

89.  Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

90.  The First Amendment to the U.S. Constitution protects the right of Plaintiffs to freely exercise their religion.

91.  Plaintiffs' in-person participation in religious formation, practice, and worship is a substantial reason that C., D., and other students attend the School.

92.  Plaintiffs sincerely believe that in-person religious formation, including worship, is an integral and necessary component of the practice of their faith.

93.  Plaintiffs sincerely believe that the lack of in-person religious formation precludes them

from fully living and acting in accordance with their faith traditions.

94.   The Students' attendance at the Everest, Lansing Catholic, and Gabriel Richard is motivated by the Families' sincere beliefs and their attendance is, in and of itself, religious in nature.

95.   Everest, Lansing Catholic, and Gabriel Richard is able to safely conduct in-person instruction, including in-person religious formation.

96.   The Order imposes an unjustified burden on the exercise of Plaintiffs' faiths, in violation of the First Amendment to the U.S. Constitution.

## COUNT II — VIOLATION OF THE MICHIGAN CONSTITUTION'S GUARANTEE OF FREEDOM OF WORSHIP AND RELIGIOUS BELIEF (MICHIGAN CONSTITUTION, ARTICLE I, § 4)

97.   Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

98.   Michigan's Constitution guarantees every person the "liberty to worship God according to the dictates of his own conscience." Mich. Const. (1963) art. I, § 4.

99.   Plaintiffs have exercised and intended to continue to exercise their rights under the Michigan Constitution through in-person participation at MANS-member schools such as Everest, Lansing Catholic and Gabriel Richard.

100.  The enforcement of the order deprives students and families at MANS-member schools such as Everest, Lansing Catholic and Gabriel Richard of their right to practice their religion as protected by the Michigan Constitution.

## COUNT III — VIOLATION OF THE FIRST AMENDMENT'S FREEDOM OF ASSEMBLY CLAUSE (U.S. CONSTITUTION, AMENDMENT I; 42 U.S.C. § 1983)

101.  Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

102.  The First Amendment to the United States Constitution preserves the right to peaceably assemble.

103.  Plaintiffs' in-person attendance at MANS-member schools such as Everest, Lansing

Catholic, and Gabriel Richard has been and would continue to be an exercise of their right to peaceably assemble.

104. The Order forbids peaceable assembly at any MANS-member schools, including Everest, Lansing Catholic, and Gabriel Richard, regardless of the precautions taken or the risks (or lack thereof) specific to the school.

105. Enforcing the Order against the MANS-member schools such as Everest, Lansing Catholic, and Gabriel Richard violates the right of Plaintiffs and families at those schools to peaceably assemble.

## COUNT IV — VIOLATION OF THE MICHIGAN CONSTITUTION'S GUARANTEE OF FREEDOM OF ASSEMBLY (MICHIGAN CONSTITUTION, ARTICLE I, § 3)

106. Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

107. Michigan's Constitution guarantees the right of the people to peaceably assemble. Mich. Const. (1963) art. I, § 3.

108. In-person attendance at MANS-member schools has been and would continue to be an exercise of the right to peaceably assemble under the Michigan Constitution.

109. Enforcing the Order against the Plaintiffs violates the right of Plaintiffs and families at other MANS-member schools to peaceably assemble under the Michigan Constitution.

## COUNT V — VIOLATION OF THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE (U.S. CONSTITUTION, AMENDMENT XIV; 42 U.S.C. § 1983)

110. Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

111. The Due Process Clause of the Fourteenth Amendment to the United States Constitution establishes includes the right to direct the education of one's children. *See Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925).

112. The Parents and families at other MANS-member schools have the right to direct the upbringing and education of their children.

113. The Parents enrolled the Students at Everest, Lansing Catholic, and Gabriel Richard in

exercise of their Constitutional right to direct their education, and in particular, to provide them with religious formation.

114.  The Order categorically forbids in-person religious formation at all MANS-member high schools, including Everest, Lansing Catholic, and Gabriel Richard.

115.  The Order makes it impossible for Plaintiffs and others at MANS-member schools to direct the education of their children in accordance with their faith.

116.  The Order deprives Plaintiffs and others at MANS-member schools of their freedom to practice their faith and to teach and model those faiths for their children and students.

117.  The Order deprives Plaintiffs and others at MANS-member schools of their freedom to receive in-person religious formation.

118.  The Families and other families at MANS-member schools cannot, in a homeschool or distance-learning setting, provide religious formation comparable to in-person formation provided by their schools, including Everest, Lansing Catholic, and Gabriel Richard.

119.  But for the Order, the families and other families at MANS-member schools would be able to direct the education of their children through in-person attendance and would be able to fully practice their faith.

120.  But for the Order, Everest, Lansing Catholic, Gabriel Richard, and other MANS-member schools would be able to provide in-person education and religious formation and would otherwise be able to fully practice their faith.

121.  There are less obtrusive yet fully adequate forms of regulation available to the state than those of the Order.

122.  Enforcing the Order against Plaintiffs violates their rights under the Fourteenth Amendment to the U.S. Constitution.

**COUNT VI — VIOLATION OF THE MICHIGAN CONSTITUTION'S DUE PROCESS GUARANTEE (MICHIGAN CONSTITUTION, ARTICLE I, § 17)**

123.   Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

124.   Michigan's Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." Mich. Const. (1963) art. I, § 17.

125.   Michigan's due-process guarantee provides at least as much protection as the similar provision in the United States Constitution.

126.   Enforcing the Order against Plaintiffs violates their rights under Article I, Section 17 of the Michigan Constitution by depriving them of the ability to direct the education of their children.

**COUNT VII — VIOLATION OF THE FOURTEENTH AMENDMENT'S EQUAL PROCESS CLAUSE (U.S. CONSTITUTION, AMENDMENT XIV; 42 U.S.C. § 1983)**

127.   Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

128.   Under the Fourteenth Amendment of the U.S. Constitution, no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV.

129.   The Order permits college and professional athletes to play sports, so long as certain precautions are taken.  Plaintiffs are in all relevant respects similarly situated to these athletes, but there is no such exception to allow Plaintiffs to provide or receive in-person instruction, regardless of the precautions taken.

130.   The Order permits numerous "non-essential personal care services" to be offered, so long as certain precautions are taken.  Plaintiffs are in all relevant respects similarly situated to those providing and receiving these services, but there is no such exception to allow Plaintiffs to provide or receive in-person instruction, regardless of the precautions taken.

131.   The Order permits gatherings in numerous locations, so long as building capacity percentages are honored.  Plaintiffs are in all relevant respects similarly situated to those

who gather in these places, but there is no such exception to allow Plaintiffs to provide or receive in-person instruction, regardless of the building capacity in which it takes place.

132. The Order permits in-person instruction for English Language Learners and for special education services.  Plaintiffs have safely provided such in-person instruction and can provide equally safe education to the rest of their student bodies, but there is no exception to allow Plaintiffs to provide or receive in-person instruction for the non-exempted students.

133. Enforcing the Order against Plaintiffs denies them equal protection of the laws, in violation of the Fourteenth Amendment, because similarly situated persons are not treated equally under the Order.

## COUNT VIII — VIOLATION OF THE MICHIGAN CONSTITUTION'S EQUAL PROTECTION GUARANTEE (MICHIGAN CONSTITUTION, ARTICLE I, § 2)

134. Plaintiffs restate the foregoing paragraphs and incorporate them herein by reference.

135. Michigan's Constitution guarantees that "[n]o person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin."  Mich. Const. (1963) art. I, § 2.

136. Michigan's equal-protection guarantee provides at least as much protection as the similar provision in the United States Constitution.

137. Enforcing the Order against Plaintiffs denies them equal protection of the laws, in violation of Article I, Section 2 of the Michigan Constitution, because similarly situated persons are not treated equally under the Order.

## RELIEF REQUESTED

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter a judgment against the Defendants and award Plaintiffs the following relief:

a.  A declaratory judgment, that Everest, Lansing Catholic, Gabriel Richard, and other MANS-member schools are permitted to conduct in-person schooling and in-person religious activities, notwithstanding the Order;

b.  Alternatively, a declaration that in-person religious schooling must be determined on a case-by-case basis.

c.  Alternatively, a declaration that the Order, as applied to Everest, Lansing Catholic Gabriel Richard, the Families, and other MANS-member schools and their families, violates the First and Fourteenth Amendments to the United States Constitution and Article I of the Michigan Constitution;

d.  Preliminary and permanent injunctive relief preventing the Defendants from enforcing the Order against Plaintiffs and MANS-member schools;

e.  Damages for the violation of the Plaintiffs' constitutional rights, in an amount to be proven at trial;

f.  Costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988; and

g.  Any further relief that the Court deems appropriate.

Respectfully submitted,

BODMAN PLC
By: /s/Thomas J. Rheaume Jr.
Thomas J. Rheaume Jr. (P74422)
Gordon J. Kangas (P80773)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
313-259-7777
trheaume@bodmanlaw.com
gkangas@bodmanlawcom

December 7, 2020

Attorneys for Plaintiffs

## <u>VERIFICATION</u>

I declare under penalty of perjury that I have read the complaint, I have personal knowledge of its contents, I know or believe that the allegations to be true, and further that, as to the allegations that I do not have personal knowledge of, I know or believe them to be true.

/s/Brian Broderick (w/consent)
Brian Broderick, Michigan Association
of Non-Public Schools

/s/Greg Reichert (w/consent)
Greg Reichert, Everest Collegiate High
School and Academy

/s/Michael J. Nalepa (w/consent)
Michael J. Nalepa, Everest Collegiate
High School and Academy

/s/John DeJack (w/consent)
John DeJack, Father Gabriel Richard
High School

/s/Dominic Iocco (w/consent)
Dominic Iocco, Lansing Catholic High
School